# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Barbara Jean Reed, ) | |
| ) | **ORDER GRANTING IN PART** |
| Plaintiff, ) | **PLAINTIFF'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT, DENYING** |
| v. ) | **COMMISSIONER'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT, AND** |
| Commissioner of Social Security, ) | **REMANDING DECISION** |
| ) | |
| Defendant. ) | Case No.: 1:22-cv-00099 |

The Plaintiff, Barbara Jean Reed ("Reed" or "claimant"), seeks judicial review of the Commissioner of Social Security's denial of her Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). This court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Before the court are competing motions for summary judgment filed by Reed and the Commissioner of Social Security ("Commissioner"). (Doc. Nos. 19, 21).

## I.   BACKGROUND

Reed filed applications for Disability Insurance Benefits and Supplemental Security Income on May 15, 2019, alleging a disability onset date of March 15, 2019, due to carpal tunnel in both hands, astigmatism, arthritis in thumb and fingers, depression, anxiety, weak ankles, arthritis in knees, problems with elbow, shoulder problems, scoliosis from neck to tailbone, headaches, misaligned hips, back problems, and acid reflux. (Doc. No. 15-6 at 2-3, 17-18). Reed's date last insured was December 31, 2024. (Doc. No. 15-2 at 15). On December 2, 2019, Reed's applications were denied upon initial review, and again upon reconsideration on March 20, 2020. (Doc. No. 15-6 at 34-35). On May 19, 2020, Reed requested a hearing before an Administrative Law Judge ("ALJ"). (Doc. No. 15-7 at 51-52). A hearing was held on January 21, 2021, with ALJ

Hallie Larsen presiding. (Doc. No. 15-2 at 36). Reed was represented by attorneys Bradford Myler and Brenda Benson, with attorney Benson representing Reed at the hearing. (Doc. No. 15-2 at 36; Doc. No. 15-7 at 55-58; Doc. No. 15-8 at 37-40). Vocational expert ("VE") David Perry also appeared. (*Id.*). On March 17, 2021, ALJ Larsen issued a decision finding Reed not disabled. (Doc. No. 15-2 at 25-26).

On March 23, 2021, Reed submitted a request for review to the Appeals Council. (Doc. No. 15-9 at 10-12). On April 11, 2022, the Appeals Council denied Reed's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Doc. No. 15-2 at 2-8). On June 15, 2022, Reed filed a Complaint in this court seeking review of the Commissioner's decision. (Doc. No. 6).

At the time of Reed's alleged onset date, she was 49 years of age. (Doc. No. 20 at 3). At the time of the hearing, Reed was 51 years of age. (Doc. No. 15-2 at 40). Reed has a high school education and has past relevant work as a forklift operator, stamping press operator, salvage laborer, and hand packager. (*Id.* at 24, 40).

## II.   LEGAL STANDARD

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 12 U.S.C. § 423(d)(1)(A). The claimant's impairments must be of "such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he

lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work." 42 U.S.C. § 423(d)(2)(A).

In determining whether an individual has a disability under the Social Security Act, the Commissioner follows a five-step sequential process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The five steps include (1) a consideration of the claimant's work activity and whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment meeting the duration requirement; (3) whether the claimant's impairment meets or is equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) a consideration of claimant's residual functional capacity and whether the claimant can return to their past relevant work; and (5) an assessment of claimant's residual functional capacity, age, education, and work experience to determine whether claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

Upon reviewing the record, the court may affirm, modify, or review the Commissioner's decision, with or without remanding the case for hearing. 42 U.S.C. § 405(g). To affirm, the court must find substantial evidence appearing in the record as a whole supports the Commissioner's decision. *Id.*; *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989); *Emerson v. Kijakazi*, No. 1:18-CR-146, 2022 WL 17403569, at *6 (D.N.D. Dec. 2, 2022). "Substantial evidence is less than a preponderance of the evidence and is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (internal quotations omitted). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)); *see Igo*, 839 F.3d at 728.

The court must consider evidence which supports the Commissioner's decision, as well as that which detracts from it. *Charette v. Saul*, No. 3:18-CV-254, 2019 WL 7605835, at *2 (D.N.D. Nov. 22, 2019); *see Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019). The court will not disturb the ALJ's decision unless it lies outside the available "zone of choice." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citing *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). An ALJ's decision is not outside the "zone of choice" simply because the court may have reached a different conclusion if it were the initial factfinder. *Id.*

## III.   DISCUSSION

The ALJ applied the five-step evaluation to determine whether Reed was disabled. First, the ALJ found Reed had not engaged in substantial gainful activity since March 15, 2019, the alleged onset date. (Doc. No. 15-2 at 15). Second, the ALJ determined Reed had the following severe impairments: osteoarthritis of the right knee, degenerative disc disease of the lumbar spine, herniation in the cervical spine, depression, de Quervain tenosynovitis status post right sided release, and right compartment finger release. (*Id.*). Third, the ALJ concluded Reed had no impairments or combination thereof meeting or medically equal to the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16). Fourth, the ALJ found Reed had the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b). (*Id.* at 18). Specifically, the ALJ noted:

> She is able to lift and/or carry up to ten pounds frequently and twenty pounds occasionally. The claimant can sit up to eight hours in an eight-hour day with normal breaks and can stand and/or walk about six hours in an eight-hour day with normal breaks. She can frequently, but not constantly, handle and finger bilaterally. The claimant should never climb ladders, ropes or scaffolds. She can only occasionally climb stairs or ramps, balance as defined in the Selected Characteristics of Occupations, stoop, kneel, crouch or crawl. The claimant can tolerate only occasional exposure to work around hazards such as dangerous moving machinery and unprotected heights. She is able to understand, remember and carry out short, simple instructions. The claimant is able to interact

>appropriately with coworkers and the general public on an occasional basis. She is able to maintain attention and concentration for routine work for two hour segments. The claimant is able to respond appropriately to work pressures in a usual work setting and is able to respond appropriately to changes in a routine work setting.

(*Id.*). The ALJ also determined Reed was unable to perform any past relevant work. (*Id.* at 24). Fifth, the ALJ considered Reed's age, education, work experience, and residual functional capacity ("RFC"), and found jobs existed in significant numbers in the national economy Reed could perform. (*Id.*).

Reed now asserts "[t]he ALJ's RFC determination is unsupported by substantial evidence and is the product of legal error because she failed to properly evaluate the opinion evidence of Jolynn Azure, M.D., according to the prevailing law and regulations." (Doc. No. 20 at 14).

**A. Opinion Evidence of Jolynn Azure, M.D.**

Reed argues the RFC finding is legal error as the ALJ failed to evaluate the opinion of Jolynn Azure, M.D. ("Dr. Azure") according to prevailing law and regulations. (Doc. No. 20 at 14). Reed specifically asserts the ALJ did not conduct a supportability and consistency analysis as required by regulations. (*Id.* at 16).

For claims filed after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a), § 416.920c(a). Rather the following factors need be considered when evaluating medical opinions and prior administrative evidence: (1) supportability; (2) consistency; (3) relationship to claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c)(1)-(5), § 416.920c(c)(1)-(5). Supportability and consistency are the two most important factors and must be explained. 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2). Under supportability "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

5

her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1). Under consistency "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence form other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2).

> As to Dr. Azure's opinion, the ALJ wrote:
>
> The opinions of one of her treating physicians, Jolynn Azure, M.D., are not persuasive (Exhibit 17F, 19F). She had opined that the claimant could only sit for two hours and stand and/or walk for two hours in an eight-hour workday, yet the claimant had only demonstrated some limited range of motion in her lumbar spine and back, with only minimal degenerative changes noted in the lumbar spine (Exhibit 17F). Dr. Azure had opined that the claimant could lift at a medium exertional level, but could only handle or finger for 25% of an eight-hour workday and reach for fifty-percent of a workday. However, while the claimant had reported pain in her hands and eventually had surgery on the right hand and finger, she displayed no problems with the left hand. Dr. Azure's exertional limits and manipulative restrictions are internally inconsistent. She had opined that the claimant would miss more than four days a month due to her impairments, yet treatment records do not reflect that she sought treatment for her pain complaints or even received medications which would correspond with that type of pain significance and frequency. Dr. Azure had also noted that the claimant had chronic anxiety and depression, but she noted only mild limitations, if any, in the claimant's ability to perform a variety of mental activities (Exhibit 19F). While she noted that the claimant's depression and anxiety required medications, the claimant has basically been without medications for her mental health throughout the period in question.

(Doc. No. 15-2 at 23). Reed argues the ALJ failed to properly address consistency and supportability. First Reed argues the ALJ cited minimal reasoning for finding Dr. Azure's opinion unpersuasive, without explaining how the opinion is supported or unsupported by Dr. Azure's own notes. (Doc. No. 20 at 16). Second, Reed contends the ALJ failed to discuss how evidence in the record is inconsistent with that of Dr. Azure. (*Id.* at 19).

6

The court does not find the ALJ failed to properly address supportability. Supportability considers the relationship between the medical opinion and the evidence from the medical source. 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1). Here, the ALJ's decision noted, "Dr. Azure had also noted that the claimant had chronic anxiety and depression, but she noted only mild limitations, if any, in the claimant's ability to perform a variety of mental activities (Exhibit 19F)." The ALJ cites to the mental capacity assessment completed by Dr. Azure which shows Dr. Azure noted Reed had diagnoses of chronic anxiety and depression but marked at most, mild limitations. (*See* Doc. No. 15-22 at 61-63). Based on these records, the ALJ sufficiently addresses supportability.

The ALJ failed to comply with regulations when evaluating the consistency factor. For example, the ALJ noted that "[Dr. Azure] has opined that the claimant would miss more than four days a month due to her impairments, yet *treatment records* do not reflect that she sought treatment for her pain complaints or even received medications which would correspond with that type of pain significance and frequency." (Doc. No. 15-2 at 23) (emphasis added). The ALJ did not cite specific records which were inconsistent with Dr. Azure's opinion, rather only mentioned a vague reference to "treatment records." *See Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *7 (E.D. Mo. Aug. 8, 2022) (finding the ALJ did not comply with regulations when evaluating the consistency factor as "[t]he ALJ did not cite specific records that are inconsistent with the [medical provider's] opinion or specify how, or which, other evidence contradicts his opinion."). The court also cannot determine whether "treatment records" reference care provided by other providers or that of Dr. Azure. "[W]hile an ALJ's explanation need not be exhaustive, boilerplate, or 'blanket statement[s]' will not do." *Hirner*, 2022 WL 3153720, at *7 (quoting *Lucas v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020).

Several courts have found the regulation requiring explanation of supportability and consistency cannot be satisfied because the court may review the entirely of the ALJ's decision and create a post-hoc rationale for the ALJ. *Loren F. v. Kijakazi*, No. 22-cv-2862 (NEB/ECW), 2023 WL 8456174, at *11 (D. Minn. Nov. 13, 2023); *see also Bonnet v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021). Furthermore, "the failure to address or adequately explain either the supportability or consistency factors (or both) when evaluating the persuasiveness of a medical opinion warrants remand." *Violet G. v. Kijakazi*, No. 21-cv-2105 (TNL), 2023 WL 2696594, at *6 (D. Minn. Mar. 29, 2023) (collecting cases). As the ALJ failed to properly address the issue of consistency, this matter shall be remanded.

Reed also argues the ALJ mischaracterized evidence. Notably, Reed contends the ALJ mischaracterized evidence pertaining to Reed's lumbar spine and regarding Reed's treatment and receipt of medications for pain complaints.

Reed asserts the ALJ's failure to discuss cervical objective evidence supporting Dr. Azure's opinion "mischaracterizes the record and illuminates the ALJ's error in cherry-picking the record." (Doc. No. 20 at 18). She alleges the ALJ's rejection of a supportive opinion leads the court to believe the record contains only "minimal" degenerative findings, although the record contains evidence supporting sitting, standing, and walking limitations as contained in Dr. Azure's opinion. She also contends the ALJ mischaracterized the record by stating treatment records do not reflect she sought treatment or received medications for her pain complaints. (*Id.* at 20). In turn, Reed points to treatment records showing she took medications such as Hydrocodone and received right sacroiliac joint injections.

While Reed contends the ALJ improperly analyzed objective evidence pertaining to her lumbar spine, cervical spine, and osteoarthritis, the court is disinclined to agree. An examination

8

conducted on Reed showed levoscoliosis of the lumbar spine, multilevel degenerative disc disease of the lumbar spine most pronounced at the L1-L2 and L2-L3, hypertrophic facet degenerative joint disease throughout the lumbar spine with minimal right neural exit narrowing at L1-L2 and L2-L3. (Doc. No. 16-5 at 6). Further examination of Reed's cervical spine showed multilevel degenerative disc disease of the cervical spine, most pronounced in the C4 and C5. The C4 and C5 showed spinal canal stenosis with right side disk protrusion, and significant neural exit narrowing on the right at the level of C4-C5 and C5-C6. (Doc. No. 16-16 at 8).

Though Reed argues the ALJ mischaracterized the evidence in rejecting Dr. Azure's opinion through the assertion Reed only had minimal degenerative changes noted in the lumbar spine and omitted analysis on Reed's cervical objective evidence supportive of Dr. Azure's opinion, the ALJ is not required to address every piece of evidence submitted. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *see Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black*, 143 F.3d at 386; *see Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995).

Moreover, elsewhere in the ALJ's decision there is substantial discussion of Reed's limitations. Notably, the ALJ opined,

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not corroborated with findings on examination. Though the claimant has had imaging which revealed degenerative changes in the mid and lower cervical spine as well as the lumbar spine, her examinations have remained fairly normal, with only some limited range of motion in the cervical and lumbar spine at times (Exhibits 3F, pg. 4, 87, 116; 5F, pg. 16; 15F, pg. 16-17; 21F, pg. 12, 21; 25F, pg. 48; 26F). Prior to the alleged onset date, an MRI of her lumbar spine from August of 2016 revealed moderate disc degeneration at the L2-3 level but no significant spinal canal narrowing or significant foraminal narrowing (Exhibit 5F, pg. 16). It also showed mild degenerative changes elsewhere without no significant spinal canal narrowing or foraminal narrowing. An MRI of her cervical spine from July of 2019, showed levoscoliosis and multilevel degenerative changes including severe right neural foraminal stenosis at the C4-5 level and moderate to severe right neural foraminal

> stenosis at the C5-6 level and moderate right-sided spinal canal stenosis at the C4-5 and mild right-sided spinal canal stenosis at C5-6 (Exhibit 5F, pg. 15; 18F). An x-ray of her right knee showed only mild medial femoral-tibial joint space narrowing in July of 2019 (Exhibit 13F, pg. 10). She demonstrated some edema and tenderness in her knee, but generally maintained nearly normal range of motion (Exhibits 2F, pg. 1-2, 8-9; 8F, pg. 3; 10F, pg. 61; 13F, pg. 3, 15). Though she had demonstrated some reduced range of motion at various times (Exhibit 15F, pg. 42). In 2020, the claimant's gait was noted to be without unsteadiness or difficulty (Exhibit 21F, pg. 12, 18, 24, 35). In October of 2020, she was also noted to have full five out of five strength in her upper and lower extremities (Exhibit 21F, pg. 35).

(Doc. No. 15-2 at 20).

Given the ALJ's discussion of Reed's cervical spine, lumbar spine, and levoscoliosis, the court is not convinced the ALJ was incorrect in its determination. The medical records show some reduced range of motion (Doc. No. 15-23 at 13; 23). However, the evidence also notes that upon physical examination of Reed in October of 2020, she had normal range of motion in the thoracic area, and stable lumbar spine with normal range of motion. (Doc. No. 16-23 at 6). Physical therapy notes are also indicative of a level of limited motion; however, it also provides Reed was "significantly guarded" during her assessment, noting "[Reed] self limited with range of motion assessment due to comfort and guarding." (Doc. No. 16-25 at 5). Accordingly, the court is not inclined to disturb the ALJ's decision as it pertains to Reed's spinal issues. A court will only disturb an ALJ's decision when it is outside the "available zone of choice." *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (citing *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021)). A decision is not outside the zone of choice because the court may have reached a different conclusion if acting as the initial factfinder. *Id.* "If the record supports two inconsistent conclusions, this court must affirm the Commissioner's choice among those two conclusions." *Ross*, 92 F.4th at 778 (quoting *Bagwell v. Comm'r, Soc. Sec. Admin.*, 916 F.3d 1117, 1119 (8th Cir. 2019)).

Furthermore, Reed asserts the ALJ mischaracterized the record in rejecting Dr. Azure's opinion that Reed would miss more than four days a month due to her impairments by opining

"treatment records do not reflect [Reed] sought treatment for her pain complaints or even received medications which would correspond with that type of pain significance and frequency." (Doc. No. 15-2 at 23). Reed points to her receipt of injections and use of Hydrocodone to refute the ALJ's findings.

Here, while Reed argues in part that the record reflects that she took Hydrocodone, the medical records only show a fleeting reference to any Hydrocodone usage. Reed was prescribed Norco in October of 2019, following a knee arthroscopy. (Doc. No. 15-22 at 32-33, 36, 38). Psychologist Michael Brady, Ph.D., briefly mentions Reed's use of Hydrocodone approximately one month after Reed's knee arthroscopy procedure (Doc. No. 15-20 at 34), and Podiatrist Aaron Albers, DPM ("Dr. Albers"), noted Reed's statement that "the only thing that has really been helping with the discomfort is what Dr. Williams our hand surgeon has had her own [sic]. She said that does alleviate her pain. When looking it up, it is hydrocodone." (Doc. No. 16-3 at 3). While the medical records show Reed used Hydrocodone, she fails to note that this was prescribed after a medical procedure performed by Daniel Williams, MD ("Dr. Williams") (Doc. No. 16-4 at 3), and there is no indication of Hydrocodone on Reed's medication list as a prescribed medication for daily use. (Doc. No. 16-3 at 5-6; Doc. No. 16-15 at 5). Moreover, while Reed is correct that she previously received injections, Reed also repeatedly refused injections asserting that her previous attempts for other problems were unsuccessful, often pushing for surgical solutions. (Doc. No. 15-21 at 40; Doc. No. 16-17 at 3; Doc. No. 16-27 at 6).

The medical records also provide Reed did not comply with physical therapy or in adhering to her medications as required. Notably, medical records reflect that "[Reed] says that she is not taking the medications on her medication list as prescribed." (Doc. No. 16-31 at 3). Physical therapy records also note "[Reed] has had multiple episodes of physical therapy with no

11

improvement stating that her last therapy was out-of-state in roughly October of last year and at that point she was not performing any home exercises only having modalities." (Doc. No. 16-25 at 4). She was also "noted to have low motivation to participate in therapy and significantly guarded with all movements today." (*Id.* at 5). On an October 5, 2020, visit, records reflect Reed was partially compliant with her home program. (*Id.* at 6). On an October 14, 2020, visit, Reed was noted to be non-compliant with her home program, with the record reflecting that "[Reed] does not follow therapist advice with bladder retraining, void times, urge suppression techniques, or home program and states 'same' with all symptoms compared to initial evaluation." (Doc. No. 16-27 at 3). It is also noted that while Reed reported frustration for attending therapy for her low back "four times" with no resolution of symptoms, "[s]he was overly non-compliant with education and home program for pelvic floor and overall has made no objective gains in therapy at this time." (*Id.*).

The ALJ appropriately analyzed Reed's pain treatment within the decision. The ALJ noted that while Reed received treatment for pain complaints, she was able to work with the impairments leading up to the alleged onset date. (Doc. No. 15-2 at 20). The ALJ also opined Reed used only non-steroidal anti-inflammatories and ice at the time of her right knee injury and underwent physical therapy. (*Id.*). Reed was also prescribed Gabapentin, but relied on Ibuprofen, and in 2019 was prescribed Cymbalta for pain. (*Id.*). The ALJ described Reed's limited range of motion in the cervical and lumbar spine at fall 2019 therapy sessions, but her knee had range of motion within normal limits at the time. (*Id.*). Reed also demonstrated moderate to severe back tenderness, and an October 2019 diagnostic arthroscopy revealed a partial ACL tear. (*Id.*). In 2020, Reed was prescribed Baclofen, Flexeril, and Diclofenac. (*Id.*). An EMG revealed Reed had chronic C5

radiculopathy. (*Id.* at 21). However, when offered a nerve block at the C4-5 level, Reed declined, but began therapy for her back in late 2020 and started Meloxicam. (*Id.*).

While Reed argues the ALJ mischaracterized evidence, the ALJ found sufficient evidence existed in the record to support the finding that Dr. Azure's exertional limits and manipulative restrictions were internally inconsistent as well as her opinion that Reed would miss more than four days a month due to her impairments. The ALJ did not say Reed received no treatment or medications for her pain complaints, rather the treatment and medications did not meet the *type of pain significance and frequency* to warrant missing more than four days a month due to her impairments. (*See* Doc. No. 15-2 at 23). Although Reed may disagree with how the ALJ weighed the evidence, this court will not reweigh that evidence. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) (citing *Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015)). The ALJ's findings were within the "available zone of choice" and supported by substantial evidence. *See Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (citing *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

Reed also asserts "[t]he ALJ does not provide any indication what type of medication or treatment *would* correspond to Plaintiff's pain or *what* the ALJ required to show that Plaintiff would have the frequency opined." (Doc. No. 20 at 20) (emphasis in original). The ALJ is not required to advise on what medications or treatments Reed should partake in for her pain or at what frequency. This is a matter left for Reed's medical providers. An ALJ may not substitute their opinion for those of a medical provider. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990); *see also Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009) (determining an ALJ may not "play doctor"); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent findings."). Accordingly, the court is

not inclined to remand the ALJ's decision based on Reed's argument the ALJ mischaracterized the evidence. The record reflects substantial evidence on the record as a whole to support the ALJ's decision.

The court shall not consider Reed's remaining arguments. On remand, the ALJ shall consider the consistency factor as it pertains to Dr. Azure. The court also cautions the ALJ to ensure the remaining providers have adequate analyses in compliance with regulations.

## IV.     CONCLUSION

For the reasons articulated above, the court concludes the ALJ's decision was not supported by substantial evidence on the record. Accordingly, Reed's motion for summary judgment (Doc. No. 19) is **GRANTED IN PART AND DENIED IN PART**, the Commissioner's motion for summary judgment (Doc. No. 21) is **DENIED**, and the matter is **REMANDED** for further consideration.

**IT IS SO ORDERED.**

Dated this 26th day of November, 2024.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court